## GOCKSTETTER v. WILLIAMS.

(District Court, D. Montana, Great Falls Division. July 15, 1925.)

No. 172.

1. Banks and banking ☞287(3)—Receiver of national bank empowered to sell all its property.

Under Rev. St. § 5234 (Comp. St. § 9821), a receiver of an insolvent national bank is empowered to sell all of bank's property, both real and personal, on order of court of competent jurisdiction, and on such terms as court shall direct.

2. Banks and banking ☞287(3)—Authority to sell property of bank not limited; "personal property;" "chattels."

No limitation is to be placed on words "personal property," in Rev. St. § 5234 (Comp. St. § 9821), authorizing sale of assets by receiver of national bank; "personal property" including any chattels, things in action, and evidence of debt, and all things personal come under general term "chattels," which includes bank bills, bank notes, coin, money, mortgages, shares of stock, and negotiable instruments.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chattel; Personal Property.]

3. Banks and banking ☞287(3)—Plan for sale of assets of insolvent national bank held safe, speedy, and legal.

Plan for sale of assets of insolvent national bank, whereby assets were divided into two groups, one group of assets to be held by trustees for transfer to purchaser in satisfaction of

certificates of indebtedness, which were to be delivered to creditors, *held* to constitute a safe, speedy, and economical plan not in conflict with law.

**4. Banks and banking** ⟜287(3)—**Requirement that assets of insolvent national bank be administered by trustees to report to court held not to authorize exercise of control over assets of bank by court.**

In sale by receiver of assets of national bank, a requirement that part of assets be administered by trustees, required to give bond and report to court, does not authorize exercise of control over assets of bank by court, but is in nature of precautionary measure, to insure a faithful accounting of property of bank and as security for performance of terms of sale.

In Equity. Application for injunction by William Gockstetter against Fred D. Williams, receiver of the First National Bank of Fergus County, in Lewistown. Injunction denied, and action dismissed.

S. C. Ford, W. D. Rankin, and Frank Woody, all of Helena, Mont., for plaintiff.

E. K. Cheadle, of Lewistown, Mont., and T. B. Weir, of Helena, Mont., for defendant.

PRAY, District Judge. The above-named Fred D. Williams was appointed receiver of the First National Bank of Fergus County, soon after it suspended business in December, 1924, and was declared insolvent by the Comptroller of the Currency; he thereafter qualified as such receiver and took charge of the bank's property, and in 1924 filed his petition in this court, asking for authority to sell all the real and personal property of the bank according to the plan and upon the terms following:

(1) The purchase price was approximately $2,106,883, representing the sum of the indebtedness of the insolvent bank to the Federal Reserve Bank, the preferred claims against the insolvent bank, and 50 per cent. of the unsecured claims.

(2) All of the assets were included, except stock assessments and cash necessary to pay receivership expenses. Such assets were divided into two groups, and title to the same was to vest immediately in the purchaser. One group of assets was to be held by three trustees for the purpose of transferring the same at a specified appraised value, or the proceeds thereof, to the purchaser in satisfaction of certificates of indebtedness, bearing interest at the rate of 2½ per cent. per annum, in the amount of 50 per cent. of the unsecured claims. The trustees were authorized to deliver these certificates to the creditors entitled to the same as advances upon

9 F.(2d)—59

the claims of such creditors, or to collect the same at maturity and pay the proceeds to the creditors. The certificates were to mature in five equal installments, the first not more than 30 days after the sale and transfer, and the remaining installments on the 1st day of December of the years 1925, 1926, 1927, and 1928, respectively.

(4) The purchaser was to be a new national bank, to be organized at Lewistown, Mont., with a paid-in capital of $150,000, and a surplus of $30,000.

The question here for determination is whether the order of sale made by this court on December 8, 1924, authorizing the above-named receiver to sell the assets of the trust, is legal. The petition for sale, objections, and orders relating thereto appear in the transcript of the testimony taken on the hearing of the above cause on June 26, 1925. Although plaintiff seeks relief by injunction, it was stipulated in open court by counsel for all parties that no actual transfer of the assets of the bank in question would be made by the receiver thereof, under the order of sale, pending decision herein; that this hearing would be considered as final, and that a decision would be rendered on the merits. The foregoing was agreed to, following the taking of testimony and arguments of counsel. Otherwise stated, in this suit, this court, in effect, is required to review its order of December 8, 1924, and determine whether it shall stand, be modified, or set aside altogether. I have considered the evidence, arguments of counsel, and briefs submitted, which, by agreement of counsel in open court, were to be the same briefs as presented by them to the Circuit Court of Appeals for the Ninth Circuit in E. J. Fifer et al., Appellants, v. Fred D. Williams, as Receiver, Appellee (No. 4465) 5 F.(2d) 286, which involved the same controversy as in this case. Apparently no new questions have been raised. The evidence is practically the same in both cases, and counsel rely upon the same objections as in the former case.

[1] The authority conferred upon the receiver of an insolvent national bank to sell the assets of such bank is found in section 5234, U. S. Rev. Stats. (Comp. St. § 9821), and provides: " * * * Such receiver, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on

a like order, may sell all the real and personal property of such association, on such terms as the court shall direct."

Under this provision it seems clear that the receiver is empowered to sell all the property, both real and personal, of the insolvent bank upon the order of a court of record of competent jurisdiction and on such terms as the court shall direct. There can be no question about the meaning of the foregoing language. On December 8, 1924, this court, under the foregoing section, authorized said sale and adopted the plan and terms recommended by the Comptroller of the Currency, the governor of the Federal Reserve district, the Chief Examiner, and the receiver of the bank, and also favored by depositors representing nearly 90 per cent. of the deposits, as for the best interests of all of the depositors and creditors generally of the insolvent bank.

In my opinion, in view of the facts and in the light of the authorities examined, and the evident meaning of the statutory provision in question, of the objections raised by plaintiff only three should be considered here, and the third one, which alleges that the proposed sale would be unwise and contrary to the best interests of the creditors, has already been disposed of, relying chiefly upon the knowledge and experience of the financial experts of the government; the other questions relate to the naming of trustees and the transfer of the money.

[2] Personal property includes money, chattels, things in action, and evidence of debt, and all things personal come under the head of the general term "chattels" (32 Cyc. 666, citing Reed v. Johnson, 14 Ill. 257, 258, and 2 Blackstone, Comm. 385), which includes bank bills, bank notes, coin, money, mortgages, shares of stock, and negotiable instruments (6 Corpus Juris, 1186; Chicago, etc., R. Co. v. Thompson, 19 Ill. 578, 584; Bouvier L. Dict.; Niles v. Mathusa, 162 N. Y. 546, 57 N. E. 184; State v. Bartlett, 55 Me. 200, 210; Woodward v. Laparte, 70 Vt. 399, 41 A. 443).

Under the language of the statute, the foregoing authorities, and the circumstances of the sale, there seems to be no special reason for placing a limitation upon the words "personal property" as they appear in section 5234, U. S. Rev. Stats. It was a sale of all the real and personal property of the bank, as it existed at the time upon the terms and plan submitted, not by the purchaser, but by the Comptroller, through the receiver,

and accepted by the purchaser. That portion of the personal property, consisting of money collected by the receiver, was to be applied as directed under the terms of sale, the details of which appear in the testimony of the receiver.

[3] The statute apparently contemplates the speedy and advantageous termination of the trust. The receiver held together the assets and transferred the bank—that is to say, all the property of the bank, as a whole—to a purchaser engaged in the banking business. The receiver must deposit money that comes into his hands as such receiver with the Treasurer, but there seems to be no requirement that he shall collect the respective amounts when due under the terms of sale. If the statute means that the receiver must personally collect the purchase price and pay it to the Treasurer, to the order of the Comptroller, who in turn must personally pay dividends to the creditors, then the order must be revised. But here a safe, speedy, and economical plan has been provided for direct payment, which apparently is not in conflict with any provision of law. Should not the proceeds of sale reach the creditors in dividends as expeditiously as may be, in the absence of any special provision requiring the Comptroller or receiver to attend personally to the payment of dividends.

[4] In the creation of a trusteeship in the order of sale, it is asserted by plaintiff that this court has assumed control of the assets of the insolvent bank. The assets shown in Exhibit D are required by the order of sale to be delivered by the purchaser to three trustees, and to be administered by them as directed in the order. Under statutory authority the receiver sold the assets of the insolvent bank under terms and conditions approved by the court, and a part thereof, as an evident precaution in the interests of creditors, were to be administered by trustees, who were required to give bond and make certain reports to the court. These requirements do not seem to authorize the exercise of control over the assets of the bank by the court, but are more in the nature of precautionary measures, adopted by the Comptroller to further insure a faithful accounting of all property in schedule D of the insolvent bank, and as a further security for the performance of the terms and conditions of sale.

Accordingly petition for injunction is denied, and the action ordered dismissed, with costs to defendant.